et al. Appellants. Mr. Pizzurro for the Appellants, Mr. King for the Appellants. Good morning, Mr. Pizzurro. Good morning, Your Honors. May it please the Court, my name is and its Ministry of Petroleum Resources. Your Honors, a fundamental attribute of sovereign unity is that until the United States Court has determined that the state is not entitled to sovereign unity, it may not order that sovereign to take any action other than that which is necessary to make the jurisdictional determination. And that is why, from the Verlinden case over 35 years ago to the Hemmerlich and Payne case in 2016, the Supreme Court has repeatedly stated that the foreign sovereign is entitled to a threshold determination of sovereign unity. That requirement is not based solely on or even primarily on a litigation burden which is imposed on the state in responding to an order of the Court. It is based on the as a co-equal with all other sovereignties, including the United States. And that's set forth in the decision cited at page 7 of our reply brief, Franchise Board of California v. Hyatt and the Puerto Rico Aqueduct and Sewer Authority. The District Court seemed to think that the Termo Rio decision counseled differently. Why is that not the case? Your Honor, in Termo Rio, the only issue before the Court that – let me back up. The District Court felt that somehow, because this is a proceeding that was brought under the Federal Arbitration Act, that Section 6 of the Act, which requires that applications be made and heard as motions, somehow altered the – this calculus and the sequencing of the immunity determination, and looked to the Termo Rio case. The Termo Rio case did affirm the fact that applications are to be heard as motions, but did not address in any way the issue of sovereign immunity, whether the threshold determination required by the Supreme Court was impacted. The Court did go on to reject an argument that Rule 12b-6 was not available to dismiss that action, because under the technical pleading requirements, there was some alternative avenue for recovery because of the permissive language versus the mandate language in the U.N. Convention and the Federal Arbitration Act. But the Court said nothing about the particular issue here. The District Court recognized that this procedural posture is significantly different from Termo Rio, recognized that in the original decision, and recognized that in the Court's decision in refusing to dismiss the appeal as frivolous. So Termo Rio really doesn't address this issue at all. Termo Rio doesn't say that because Section 6 of the Federal Arbitration Act requires applications to confirm and enforce arbitral rewards shall be heard as a motion, means that the Court can require a foreign sovereign to address the merits of the case before the Court has determined that sovereign immunity is or is not appropriate. What if the District Court had said, look, to expedite resolution of this, and just for my own kind of efficiency and case management purposes, I want you to brief sovereign immunity and the merits, so to speak. And what I'm going to do is I'm going to rule on sovereign immunity first. And if I grant sovereign immunity, then the case goes away. And if I'm going to deny it, I'll allow you to appeal that. But I just want to do all the briefing together. I understand, Your Honor. What would be wrong with that? What would be wrong with that is that the Court is ordering the sovereign to do something in advance of the determination of sovereign immunity. The sovereign in many cases, the sovereign has chosen to raise its merits defenses along with its jurisdictional defenses. And it certainly has that ability. But the Court does not have the ability to order the sovereign to do so. So the order that Your Honor posits would violate sovereign immunity. However, the idea that if all of those issues were brought to the Court in the first instance and the Court were to deny, if they were all brought to the Court in the first instance, the district court would be on immunity issue first. If the sovereign immunity issue were denied, then it would be obligated to permit an interlocutory appeal under the collateral order doctrine. It would be divested of the jurisdiction itself for a sovereign, had a definitive appellate determination of its sovereign immunity. Mr. Pizzurro, I understand your position to be that the briefing on the non-sovereign immunity issues is the burden. And what I'm curious about is, you know, there is some ambiguity in the way our cases talk about litigation burdens. It is clear that the suit and cases have talked about discovery and trial, perhaps even the answer. But my question is, is there any case that talks about the burden of lawyers' briefing? And do you see the distinction I'm making? The client, in fact, doesn't have to do anything as a factual matter if the lawyer is coming and saying, here are the legal defenses. Well, to answer Your Honor's first question, am I aware of a court that has addressed this particular issue, exactly briefing? I am not. I think this is a case of first impression. The cases of which we are aware are the cases cited in the briefs, which include having to file an answer. That happened in the Butler case in the Eleventh Circuit. It actually happened in this court in the Price and Fry case, in which there was an order. And this is set out pretty clearly, actually most clearly in the plaintiff's brief at page 25, where the sovereign defendant was ordered to file an answer before the issue of sovereign immunity would be addressed and there were some discovery requests that went along with it. Mandamus was applied for and immediately granted by the court. And the district court was told that it had to determine the issue of sovereign immunity before it could order an answer. Now, the notion that the actual laboring war is undertaken by the lawyers for the sovereign as opposed to the sovereign itself, I don't think that's a meaningful distinction. Obviously, the sovereign as a client is still under some obligations to assist counsel in the defense in presenting what's ever necessary. They have to pay. I mean, the burden is there. It's my understanding, though, that there is no case in this circuit where there was a collateral – there was an interlocutory appeal allowed under the collateral order doctrine where there was no order by the district court denying the immunity and requiring the case to go forward. There was an order actually saying, I see you claim sovereign immunity. No. No. I think the Price case is an example of one where the court, in effect, deferred the decision on immunity. The court didn't say you don't have immunity. The court said I'm not going to decide the issue of immunity until you've filed your answer. That's exactly what happened in the Butler case in the 11th where the court deferred the issue. So the issue isn't whether or not you require a denial. As I read Butler, there was an order that denied immunity in favor of allowing plaintiff jurisdictional discovery, and then the court appeals it. No, that discovery is not even relevant to immunity, so that's wrong. But there was an order denying a request for immunity. It effectively did, Your Honor, but it was effectively a deferral because it wasn't denied with prejudice. It wasn't the conclusive determination of the immunity issue in the case. The sovereign would have been entitled to raise that again once it had done what the district court had ordered it to do, and it was that that the Eleventh Circuit took issue with. And you said Price was your other case? The Price case is a case. All of this is a little difficult to – because there isn't a real written opinion, but I do – I again would say that the plaintiffs did a very nice job of laying out exactly what happened at page 25 of their brief in which Libya, which was the defendant, had been ordered after some litigation conduct that may or may not have been dilatory sort of beside the point. But the district court, I guess at one point, threw up tans and said, you know, file your answer and then I'm going to, you know, we'll get to sovereign immunity, but you're going to file your answer and you're going to comply with these discovery requests. And Mandamus was issued, ordering the district court to determine the issue of immunity before the answer needed to be filed. So you mentioned Mandamus, and one question I have is why would we recognize a collateral order, a category of appeal available under the collateral order doctrine, when what we've seen is ordinarily without an order denying immunity no appeal. In the case where the burden might be extraordinary, there's always Mandamus as a backstop, and in fact, it's been used. Yes, Your Honor. But in those cases, there wasn't any effective alternative vehicle that the defendant, the sovereign defendant, had at its disposal. Here we did, because the district court recognized that it had been divested of jurisdiction and basically said we're not going to take any more action until this is resolved on the appeal. And as we cited the Cheney case, which is to the effect that Mandamus will be denied if there is some other effective vehicle for review. So it was, could we have asked for Mandamus? We could have, but we ran the risk that it would have been denied because the appeal was a sufficient vehicle to address the issue and preserve the rights of the sovereign. But collateral order doctrine requires these issues to be resolved on a categorical basis, right? We don't look to the burden in an individual case. Correct, Your Honor. So why wouldn't, if we're talking about how a district court is structuring its briefing orders, and you make a fair point that that could implicate to one degree or another an immunity, but it's on the margin, and what would be wrong with saying that Mandamus is the vehicle, if the district court does something really off the wall, you come up and seek Mandamus, but you don't get a de novo appeal as a matter of right for every pedestrian briefing order? Your Honor, that's the central question here. Is this briefing order that we're talking about a conclusive determination or violation of the right of the sovereign to its immunity? If the answer to that is yes, if the sovereign cannot be compelled to take any action that's otherwise unnecessary to a determination of sovereign immunity, and that's the court's own subject matter jurisdiction, then any order, no matter how invasive or how burdensome, becomes a violation. And it is that which is before the court. That has been conclusively determined. And that's why the issue in this case of both the applicability of the collateral order doctrine in this Court's jurisdiction and the merits of the appeal allied. Because if we're correct that the order is a violation of immunity, then there is the collateral order doctrine does apply, and the order must be reversed. Your position is that it would be the same for any non-sovereign immunity issue? So the district court couldn't say, I won't get into the merits, but I want joint briefing on all threshold non-merits grounds, form nonconvenience or discretionary abstention or grounds like that? District court couldn't do that? Correct, Your Honor. That would be our position. And the district court couldn't say, I want briefing on all issues that can be resolved as a matter of law that are akin to a 12B6 issue, rather than an issue where the defendant would want to put on evidence? Correct, Your Honor. And the district court couldn't even make the sovereign file an answer? That's correct, Your Honor. Just generic. And that's an awfully broad set of positions. Your Honor, we believe that's supported by the case law. It's supported by Butler. We believe it's supported by this Court's action in the Price case. We believe it's supported by the Supreme Court decision in Hemingway campaign. It is this right to a threshold determination, because the dignity of the foreign state is immediately assailed if it is required to take some action in a court which has not even determined whether it has power over that sovereign, whether or not that sovereign is entitled to immunity. And so there's no basis for the order that Your Honor is highlighting. The dignity of a foreign sovereign is implicated, to one extent or another, when a district court is managing jurisdictional discovery on the scope of sovereign immunity, right? Correct, Your Honor. But not every discovery order in that context qualifies as a collateral order, right? Mandamus is the vehicle for policing in that context. Your Honor, I would agree. But there, you know, the principle that we are advocating here is cabined by the proviso that actions that are necessary for the court to determine that issue of immunity are not within what we're talking about. And this order has nothing to do with that. I understand. I'm just saying there is at least that category of orders where intrusions on the sovereign's dignity are policed through Mandamus rather than through collateral order appeals. Correct, Your Honor. But in those instances where you're now in the discovery jurisdiction. Your Honor, you're not talking about situations in which there is an appeal that is available that would divest the court of jurisdiction, or where the district court says, okay, I'm going to wait until I hear from the court of appeals. That's our case, which is why. But that's a little bit circular. I mean, the district judge did that recognizing that this was an open question. Yes, Your Honor. But if we were to rule in your favor, then whether the district court said that or not, sovereign counsel would say, we're going up, we're going up, this is too much. And in fact, I mean, one question I'd be interested in hearing from you about is, in many of these cases with the foreign sovereign immunity claim, the immunity is quite intertwined with the merits. Correct, Your Honor. And I wonder how you could answer the concern that we would have a lot of immunity appeals saying, well, that's too far into the merits, you don't really have to decide that issue, or we don't really have to brief that issue for the court to decide the immunity. There are going to be a lot of judgment calls about the appropriateness of the spillover into merits issues as part of resolution of immunity. I understand, Your Honor. Let me ask you, I think there's two questions there, and we'll try to answer the first one first. The answer to the first one is, had the district court judge said, I don't recognize your right to appeal, and I don't recognize being divested of jurisdiction. In that instance, yes. I think that mandamus would have been the only available remedy, and that would have been applied for. But that's not where we were. And given the admonition of the Supreme Court in the Cheney decision, where you have an alternative avenue, because mandamus is so strictly regulated, appeal was appropriate. To answer Your Honor's second question, which has to do with the intertwining of the merits and the jurisdictional issue, I think that was resolved pretty conclusively by the Supreme Court in the Hemingway campaign. Judge Justice Breyer said that in response to precisely that point, that a determination of the jurisdictional issue would entail, perhaps, a resolution of some merits issues at the threshold of the case. He said, so be it. Do it. Because that is how important this principle of immunity is, how important it is that it be resolved before any other aspect of the case is addressed. It's typical in these cases that the sovereign does respond on immunity grounds and on other, at least, you know, motion-susceptible defenses in one filing. And it's your position that they do that as a matter of, you know, they do that voluntarily, but that if a court wanted to make that the standard practice, it would lack the power to do that. Yes, Your Honor, exactly. I see my time has expired. We'll give you a little time for rebuttal. Thank you. Morning, Your Honors. Morning, Mr. Kim. May it please the Court, my name is Michael Kim from the firm of Kobre & Kim, and I represent the appellee, Process and Industrial Developments Limited, as I did in the proceedings below. I believe that the Court's analysis can start and stop at the collateral order doctrine without struggling with what, how much burden is enough or too much. And that reason is, is that there really is no case where an appellate court has a decision, has determined that where a district judge had not actually made a decision, that the district judge's actions somehow constituted some effective decision, and therefore, the party had a right to interlocutory, immediate interlocutory appeal. The first prong of Cohen is designed to distinguish decisions that are tentative from decisions that are firm. And there's nothing tentative about the district court's decision that the sovereign against its will can be forced to brief merits issues together with immunity issues. I agree, Your Honor. It's a perfectly firm ruling, and the district court indeed stayed its proceedings so that that question could come up to this Court. I agree, Your Honor, that a court not actually issuing a decision, but perhaps being tentative about what it might do, would not be an effective decision. What we have is not an actual decision on jurisdiction. In every case that has been cited in these briefs, no matter how the parties have characterized it, how the appellate court has characterized it, the actual order by the district judge just said, denied. And here... I'm sorry. Your friend has said, however the district court characterized it, because leave it infringes our immunity to do that merits briefing, the order was a denial of the immunity. So it depends on how you define what it is that the immunity protects against, and they're taking a broader view of what it protects against. So on their view, it does decide the immunity. Correct. And that is, I think, the adoption of that position by the appellate court, I would submit, now would create an entire category that is very murky of anything that could happen in the district court that is not an actual decision on an issue, but some type of behavior by the district judge that subjectively would constitute an effective decision. And I would say this is completely impractical as a matter of judicial administration to say that parties can fit within the collateral order doctrine by citing practical effects of a district judge's behavior. Here, the district judge... It's more than practical effects. It is a final, definitive decision on one aspect of immunity. I mean, there are two different aspects. One is the merits issues about the waiver exception and the arbitration exception. The other is this procedural aspect of immunity, which is do they have a right to tee up those issues first. And I would submit that what this district judge ordered simply said that the party shall adhere to a briefing schedule and then gave a number of dates. The district judge... And ordered the sovereign to present all of its merits issues together with its immunity defenses. It actually did not order the sovereign to present any particular arguments. It basically allowed the sovereign to say whatever it wanted to say. And said, give me all of your jurisdictional and merits defenses together. This is the sovereign's one and only chance to litigate the confirmation action. I believe that perhaps some of that might have been implied based on some readings, but the court did not actually literally order Nigeria to brief any particular issue. It basically ordered Nigeria to respond to the petition and allowed Nigeria to raise any arguments in which... It said Nigeria shall include all jurisdictional and merits arguments that it asks the court to consider. Right. That it asks the court to consider. It is really up to Nigeria, whatever it wishes to include. And what I would submit is that... Suppose they had filed something and raised three merits defenses, and then later in the case they sought to raise a fourth. Do you have any doubt that this order would bar them from doing that? No. I think Judge Cooper would have barred them. However, I think where we are talking about what is the court actually ordering them to do, and is it actually a decision on the issue of jurisdiction such that any party in the future in a district court proceeding could come up here and complain about it, I would submit that if you read into the notion of what a judge might do on jurisdictional issues or the fact that he ordered a response to a petition to come at a particular date would, as I mentioned, open up an entire category of appealable... But the district court did not indicate in this order that it would decide jurisdiction first and allow Nigeria to appeal if it denied sovereign immunity, right? Correct. There's no indication of that in this order? That's correct, Judge. Was there any indication of that otherwise in the record that the district court was going to proceed in that fashion? No, Your Honor. And there is no legal requirement for him to do so that way. Pardon me? There is no legal requirement for him to do so in that way. There is no legal requirement? Correct, Your Honor. So you're asking us to affirm this order even though, as far as we know, if we were to affirm this order, the district court could perhaps decide the merits and say, you know, I'm not going to decide sovereign immunity. Correct, Judge, because this is a petition to confirm an arbitration award. So what we are calling the merits here, in fact, is just one petition and one motion, which by operation of the Federal Arbitration Act, the FSIA contemplates a petition to confirm an arbitration order to be brought as one motion, and the district judge then gets the motion answered and decides the motion. So let me see if I understand your position. So if the district court had said, I'm not going to let you brief sovereign immunity, I just want to brief the petition to confirm, that would be okay? I think that would actually not be fiscally possible because it is an integral part of the petition to confirm an arbitration award that sovereign immunity actually be briefed because the petitioner has a prima facie burden of establishing lack of immunity. So if a petitioner were to file a petition without those arguments in it, or if the district judge were not to consider those arguments, it would be a defective proceeding. And what if the language in Helmholtz and Payne where the Supreme Court said that, well, yeah, there may be lots of instances where merits and jurisdiction are intertwined, but that doesn't mean that you go to the merits before you decide jurisdiction. You've got to decide jurisdiction first. And I would submit, Your Honor, the district judge here was trying to decide jurisdiction first because in Helmholtz and Payne, obviously, that is not an arbitration award confirmation proceeding. Here, Federal statute has set out that the way that these proceedings go is by motion. Now, the district court here chose the least burdensome type of motion practice one could have, which is one motion on the issues that are already embodied and what it means to confirm an arbitration award. So he did not expand the proceedings beyond what the statute already required. But you say the statute requires that. It talks about motion of seeking confirmation by motion. Yes. But what's your strongest authority that it requires an omnibus motion in the sense that we're familiar with, for example, in Rule 12? I don't believe any court has directed district courts, any appellate court has directed district courts to do it by one or multiple motions. So there's really any sort of practice norm that you can point us to or, you know? The practice norm is that in virtually every reported case, the sovereign has briefed the petition because the petition itself, the jurisdiction, the immunity issue is one of a set of necessary issues for the district court to decide whether an arbitration award can be confirmed. So it has been set. Section 6 doesn't say everything has to be decided under the rubric of one motion. That's correct. It doesn't prevent a 12B1 motion from the defendant. It doesn't prevent either party from seeking discovery. It doesn't prevent either party from seeking to introduce live testimony or cross-examine witnesses or anything remotely like that. Right. And nor does it prevent a district judge, if he or she feels appropriate for that particular case, of dividing the motion into multiple motions and deciding issues in different configurations. Right. So which is to say that Section 6 doesn't do all the work that you attribute it to, which is to automatically, as a matter of law, compress all issues into one round of briefing. Yes. I agree that Section 6 does not require a district judge to do it by one motion. Okay. So then if we're back to ordinary principles of foreign sovereign immunity, we have pretty settled law that a court is supposed to decide the immunity first, even if development of the immunity issues requires discovery and fact-finding and such. As early as practical. Yes. I believe that the guidance is as early as practicable. And I would submit that where you have a district judge operating within a legal construct that directs him or her to do this by motion, and the district judge, based on that case, decides how to structure those motions. Was it improper for the defendant to file a 12b-1 motion? No. No. So you have two motions? Right. But I believe it's within the discretion of the district judge as to how he wishes the particular issue of issues in the petition to be heard. And I think to create a category where you have an arbitration confirmation proceeding, which the statute says has to be done by motion, and where it does not direct the district judge to do it by one or multiple motions. Now, I understand if the district judge were to expand the scope of the proceedings to beyond what's necessary to confirm the arbitration award, you would have a potential mandamus issue. However, where the district judge is literally taking the issues in the petition and dividing it however he or she wishes, I believe it would be dangerous to create now an immediately appealable category based on some subjective determination of how the district judge should have done that. Your position, I take it, is confined to arbitration confirmation proceedings, that you're seeing that as a different kind of proceeding, supposed to be very abbreviated, done traditionally mostly on the papers? My position on the burden is confined to the arbitration context. My position on collateral order doctrine, I would say, sweeps across all cases, which is a district judge actually has to decide something before it can be appealed if it otherwise fits the other requirements. So you would say in a non-arbitration case, it's just an FSIA action against a sovereign, and the district court enters a briefing order requiring the 12B1 Foreign Sovereign 12B6 motion, your position would be no, let's assume we think that's an abrogation of immunity. You would say still no collateral order appeal? Correct. I would say that's, depending on the facts, potentially vulnerable to mandamus, but not collateral order appeal. Why? Because I believe that... How's that different from, say the district court denies a foreign sovereign immunity motion at the motion to dismiss stage and says, come back to me on summary judgment. I mean, that's not fully final, and yet we permit interlocutory appeals of that sort of order. But it is actually a decision, not actions that people argue constitute an effective decision. I believe that actions that are not decisions, but which are otherwise aggregated law, are dealt with by mandamus if it otherwise satisfies the requirements. If one creates a category of, I guess, virtual decisions that district judges could be deemed to have made without actually making a decision, I would say it basically swallows up the entirety of what could happen in district court proceedings, and I would submit could occur multiple times in a proceeding. After the first interlocutory appeal of some action by a district judge that's deemed to offend the dignity of a sovereign, that that same dignity could be offended yet again multiple times in the proceedings. And if the standard is simply that the district judge effectively denied or offended the dignity and allowed interlocutory appeals, I would say that is an unmanageable doctrine to try to have district judges understand what they're supposed to do and not do. Your opponent's position is broad, but it doesn't seem to me it's murky. They want a bright-line rule that in confirmation cases like other cases, the immunity issue gets decided first, period, full stop. And you do what you brief it, you develop the facts, you have discovery, you have a mini-trial, you do whatever you have to do to resolve the immunity before you go on to other issues. It's not a hard rule to understand. Right. I believe my opponent's position is murky on the collateral order doctrine, but it's quite clear, as Your Honor points out, on the burden. My opponent's position is that a district judge setting a deadline is itself a violation of sovereign immunity. And I submit that there really is no case law or statutory basis. What would be murky? Suppose we rule for your friend on the other side and the case goes back, and we establish a rule that binds district courts going forward. What would be murky in how that is implemented? I mean, the district courts in future cases will get the FAA petition, and if the sovereign tees up, does a 12B1 motion and says, no, we really are immune, that issue will get litigated. There will be a collateral order appeal. And if the sovereign loses, then the case goes forward. Well, that aspect would not be murky at all. But what would be murky is what allows a party to lodge an interlocutory appeal and fit within a collateral order. You said setting a deadline. I'm not sure. Setting a deadline for what? For answering the petition. How would that? I mean, if the judge, the first thing the judge does is set a framework for deciding the immunity, any briefing or any orders relating to that would not be immediately appealable. It would only be orders relating to other aspects of the case. Correct. And I think that what would be murky is not the, if this court were to say from now on in all arbitration confirmation cases, the district judge is required to say, on the first deadline, you should only brief the immunity issue. I will decide that first, and I think it should be decided. That part would be quite clear. What I'm suggesting is that because we're not here on a mandamus petition, that to take jurisdiction over this appeal and say this appeal fits within a collateral order doctrine, because the district judge, even though Judge Cooper did not actually decide the issue of immunity in the ways that all the other judges in all the other cases had, we are going to deem him to have somehow decided it or to have taken, exhibited some behavior that qualifies as a denial of immunity, and therefore the appellate court will step in and actually issue a ruling. I believe that part would be quite murky because of the endless configuration of different events that can happen in a district court proceeding that could be deemed to have been an offense to the sovereign's dignity. Except that the district court's management of the immunity part of the case, if we have this strict sequencing rule, it would still be the case that the district court's management of the immunity component would be reviewable only through mandamus. That's Papandrea, right? They issue a jurisdictional discovery order and the sovereign says it goes too far, and they can try to come back, but it's difficult. That's not a collateral order appeal. I agree. I agree. But I think that if on this appeal you take jurisdiction and say this fits within the collateral order doctrine, I think that's really what would create the murkiness because We say that the immunity includes a procedural component to have the immunity issue decided first. That was abrogated here, and we send it back. I believe that would still, I guess we're splitting hairs now, but I actually think that that would go to the issue of whether it's too much burden such that it violates immunity for the district judge to order these issues. But that's just the debate over the substance of the immunity, right? And they have cases saying they can't be made to do discovery, they can't be made to stand trial, they can't be made to answer a complaint on the merits, and you have cases saying they can be made to do a status conference on discovery, they can be made to be subjected to jurisdictional discovery, and there's just a legal question about whether this kind of joint briefing falls on one side of that line or the other. Correct. But then the opinion that this Court would have to write is that the scheduling order issued by the Court is an effective denial of immunity as opposed to a decision on the issue of immunity. And I think that categorical black-and-white distinction is quite important for the proper operation of the collateral order doctrine because where the appellate courts are going to try to create a category of appealable conduct or orders beyond what is already in 1291, 1292, would require for the decision to actually have been made. And here there is no decision on immunity that has been made, at least not the way that any other court has ever defined a decision. In every case cited, the district judge actually said denied, the word denied, or issued an order that actually decided the jurisdiction issue or the immunity issue. This would be the first case where a district judge, by exhibiting certain behavior, would be deemed to have effectively denied immunity. What are we to make of the language on the last, I guess, full paragraph of the district court's order, page 5 of the order at docket 34? I'm not sure what the JA side is, but the district court said, and in any event Nigeria has not explained how separate jurisdictional and merits stages with attendant appeals would alleviate its burdens relative to the ordinary process of a single round of briefing under motions practice. I think the way you should interpret that is that this district judge was actually trying to do what the law guides him to do, which is to minimize the burden on the sovereign. So to keep in mind, unlike the cases where there are depositions or discovery or other things that have not yet occurred, here the very arguments Nigeria is complaining that it would have to have put into the answer to the petition, the response to the petition, had already been briefed. It's really a cut-and-paste job. And what this district judge was trying to prevent is what has now occurred. What's been briefed? The merits of the New York Convention defenses? The immunity issues. Nigeria did advance the immunity issues in a briefing, and now instead of the one brief on immunity issues that they had already written and submitted to the district judge, we now have a year later an appellate proceeding. And I think I note with some interest that Nigeria's position on this appeal as to whether this court should decide the immunity issue, if otherwise it felt it was appropriate, was that this court should not decide the immunity issue. They want more proceedings in the district court and then to have another appeal. So you have this very odd situation where the district judge is trying to minimize the burden on this sovereign, and this sovereign seeks out more burden with motivations that I think many can guess as to what that would be. I mean, they seek to front-load immunity, and they do so in the context where the substantive defenses we're talking about under the New York Convention might well be very fact-intensive. And if that was their position, they could certainly brief it and then have the district judge ask the district judge to consider immunity first before going into any fact-finding, therefore relieving them of the need to actually have fact-finding. No, but the district court has said conclusively has ordered them to present their New York Convention defenses. But it did not. And that's going to involve factual development. I mean, your opening submission had 500 pages worth of attachments, and they're the ones with the burden of establishing New York Convention defenses. And those oftentimes involve factual questions, oftentimes involve determining questions of foreign law, which are litigated through often can be litigated through affidavits and such. This is more than just doing like the equivalent of a 12B6 brief. Well, in the initial submission, whatever Nigeria already knows as to why the petition should not be confirmed factual or not does have to be submitted. So burdensome or not, the procedure for ---- Right. But you're treating that as if it's some minor, just a little bit of extra briefing. It's not that. It's the development of factual defenses that are likely to be pretty complicated. Well, I'm treating it that depending on the case, it could be a lot or it could be a little. But in a petition to confirm an arbitration award, where the contemplation is that there is one motion, and of course if there's more fact-finding necessary, there will be other issues with ordering more fact-finding. But where the statute already guides the district judge to do this by motion, a district judge says, let me see your position in response to the petition, whether it's factual or whatever, or if the response is we need more fact development. Let me see your whole case, not just the equivalent of an answer where they say admitted, denied, whatever. Well, I don't believe this district judge required Nigeria to submit its whole case. It required it to submit an answer to the petition. And it is quite common, as seen in all the arbitration confirmation cases, for parties to answer a petition and argue that more factual development is necessary. So the typical answer to a confirmation petition or response to a confirmation petition is a brief. Yes. And it includes legal argument. And can you give us any sense of how often there are factual, there is also a request for some kind of factual development? I don't really know statistically. I know it's uncommon but not unheard of for a party, much as in any motion, whether it's a summary judgment motion or perhaps one side moves to dismiss and the other side opposes it by saying there are factual issues embedded. It is not unheard of for parties, for a sovereign to say in an answer to a petition, here are some factual allegations and more factual development is necessary. And it is really treated just like what a summary judgment motion or a motion to dismiss would be. Then the district judge has to make a determination. Are the factual allegations being made sufficient to cause me to have to do some type of discovery or can I resolve it based on what the parties have submitted? So it's quite parallel to what we see in cases in Federal court that don't involve arbitration confirmation, where if you're filing a response to a motion to dismiss or if you're filing a motion to dismiss under, which is like the comfort, I guess, you're filing a Rule 12 motion, the requirement is that it be an omnibus motion, that it be a motion that raise the defenses, except for subject matters. Pardon? At least the points that you wish the court to consider. District courts typically do not require parties at that stage to present every piece of evidence that could possibly exist on the issue, but it does wish to know what your position is and if you have any facts already in your possession to advance those facts, particularly where it's an arbitration confirmation, where you have district judges thinking you're supposed to do this by motion, and all this district judge wanted was an answer to the actual motion on the issues that are already embedded within the issue of whether a petition to confirm an arbitration award should be granted. If now the appellate court ---- is not the full-blown presentation of the case with exhibits and factual argument, it's simply the rough equivalent of an answer, and it's a pro forma document which says there are disputed facts that we need discovery or a hearing or whatever, I mean, that really undercuts your view that arbitration cases have to be treated very differently because the FAA mandates this summary compressed proceeding. Well, I think the special thing about arbitration cases is that unlike the cases where a complaint is filed and the sovereign moves to dismiss and says I want the immunity issue adjudicated and the court, you know, makes a decision on that, or the mandamus cases where the court says, no, I don't want to deal with the immunity issue, I want to have discovery or something else, unlike those cases, here you have a statutory construct where there's only one type of motion that can be made, which is a petition to confirm the arbitration award, and then the district judges are directed to treat it as a motion, as motion practice. The district judges can do this by multiple motions or one motion, but if the appellate court is going to tell the district judge that now, even though the statute doesn't require it, that a petition to confirm the arbitration award now must be broken out necessarily into multiple motions, regardless of what the district judge feels, and then the first motion has to be a jurisdictional motion, say that that is really, I think, really without any basis for the court to really say that that is something that the FAA requires. Roberts. No. The FAA neither requires nor prohibits sequencing. But the FAA does. So we just come back to general sovereign immunity principles, which are decide the immunity question first. But the FAA does already essentially declare that a sovereign does not have immunity for the fact, for the proceeding of confirming an arbitration award. And that is done by one. Which is assuming the merits of the sovereign immunity question. Yes. And is any part of your argument about the unitary confirmation petition, it's not drawing on the New York Convention, it's really based on the FAA? Correct. I mean, I think. Do we have any, I'd be interested in if either council has any sense of how this is taking care of in other jurisdictions where confirmation proceedings are abroad. You mean other countries? Yes. Well, the practice varies quite a bit. The New York Convention does not require it to be one motion or multiple motions. However, where I do think the New York Convention is relevant to this discussion is that Nigeria is a New York Convention country. So you have a sovereign that not only should expect by operation of the FAA to face at least one motion, where it says motion practice, at least one motion to confirm an arbitration award. And the factors for doing so are already well known. But you also have a sovereign that signed on to the New York Convention. Therefore, I think the notion that Nigeria has not already kind of essentially expected that this zone of at least having to answer the petition, as directed by the district court, is a violation of the sovereign immunity, I think is really unsupportable. The whole scheme of the FAA, the New York Convention, is intended essentially to carve out as a proceeding to confirm an arbitration award, that that is something that falls outside of the zone of immunity from suit. By a sovereign in the U.S. courts. But again, you're assuming the merits of the sovereign immunity question. You're assuming that there was in fact, that this does in fact fall within the arbitration exception. I think that goes to the issue of whether the petition, the arbitration award should be confirmed as opposed to the jurisdictional issue. I think... No, no, it goes to whether or not the arbitration exception to immunity applies. The three questions. One is, do we have jurisdiction here? The second is, was the immunity in fact abrogated by the arbitration exception? And the final is, is there any other reason why the award should not be confirmed? Right? And I believe that both Termo Rio as well as Chevron, this Court basically treated the fact that when there is a prima facie showing that there's an arbitration agreement or an arbitration award, that goes to jurisdiction if there's a prima facie showing. That goes to the jurisdiction of the district court to be able to adjudicate the proceeding. Now, in adjudicating the proceeding, based on the particular case, the district judge might conclude that there is no agreement to arbitrate, that's valid, or that there is no award. And then that's possible, that would lead to a possible decision of a refusal to confirm the award on the basis of immunity. However, that does not prevent the district judge from taking the case and adjudicating those issues, because the threshold prima facie case actually has been met. Thank you. Thank you, Your Honors. I believe that, Mr. Pezzura, time expired, but we'll give you a couple of minutes for rebuttal, two minutes for rebuttal. There's a lot there to unpack, and I'll leave it as brief as I possibly can. I want to start out with a couple of issues that came up at the end of your discussion with counsel, and then go back to one of the first things that was discussed. At the end, there was some discussion regarding the underlying jurisdictional argument as to whether or not one of the exceptions to immunity applies in this case. That is not an issue before the Court. That was not an issue that's even been considered yet by the district court. It's not an issue that's been briefed in this Court, and they haven't even submitted a brief on any of the issues in the district court. So that issue is not here. I think the concern, Mr. Pezzura, is that in a case in which a party, a sovereign, has agreed to arbitrate, and therefore falls within the arbitration exception under the Foreign Sovereign Immunities Act, if your position prevails in every such case where the sovereign is unhappy with the results of the arbitration, they have a tool for delay in the enforcement proceeding. They can, say, insist on a determination about immunity first, and when that determination is made, even if that's open and shut, take an appeal, and then that, as we know, depending on the circuit in this country, can take, you know, months to even years, and then it goes back to the district court, and they begin the confirmation process, and the scheme under the FAA and under the New York Convention contemplates that the confirmation proceeding will be a quick and unitary proceeding. So the concern is that this just hands a delay card to every sovereign. Your Honor, I understand what you're saying. Let me say that what Your Honor posited in terms of the procedural and prerogatives of the sovereign are that exist in every single case brought against the sovereign. Any case brought against the sovereign, the sovereign can raise its immunity. It has a right to have that litigated. It has a right to an immediate appeal, whether that's an arbitration case or a non-arbitration case. So the issue is, is it different in an arbitration case? Is there anything in the case law? Is there anything in the statutes? Is there anything that would support the notion that this is different, that the delay issue creates some sort of an exception? And I would request that the Court take a look at the recent case by the Supreme Court in Harrison v. The Sudan, in which the Supreme Court was addressing the issue of the necessity for formal adherence to the pleading requirements under the Foreign Sovereign Immunities Act. And in that case, the sovereign was on actual notice that there was a case. They ignored the case. They allowed the case to go to a default. The default was entered, and it was after enforcement proceedings started that they intervened in the case and said, no effective service. And understandably, the plaintiff was upset and called this dilatory tactics, and the Supreme Court said, too bad. So unless there is some support, and they've offered none, that this is a different kind of animal because it is a confirmation of an arbitration award, then I don't think that that concern is even relevant. Now, let me make a couple of things also pretty clear. First of all, Your Honor asked a question about the New York Convention. The New York Convention itself has nothing to do with motion practice. There is nothing in that convention that talks about how issues are to be litigated or raised. In the United States, it's in the implementing legislation. And in the, I guess it's Chapter 2 of the Federal Arbitration Act, which is the implementing legislation for the New York Convention, it imports those provisions from Chapter 1 of the FAA, the domestic section, that aren't otherwise inconsistent with the convention. And that's how we get Section 6 in the motion practice. There actually is something, which is that the convention itself says that the sovereign has the burden of proving the defenses, which suggests this is done by evidence,  Correct, Your Honor. And just to that point, very briefly, because it was raised, I want to, the Court, I'm sure, has read all the papers, and you can see this is a, now as we stand here, is approaching $10 billion. This is one of the largest international arbitration awards in history. It is extremely complex. There are a lot of underlying issues regarding the validity and enforceability of this award, not just jurisdictional issues. So we're not talking here about the run-of-the-mill normal arbitration case. I'm not sure that that is necessarily relevant to the issue we're discussing here about an invasion of the sovereign's immunity. But it is something, to the extent that we've heard about delay and people are not raising meritorious arguments and just write a brief and it's not really a big problem, I think that that is something that ought to be taken into account. In terms of the inability or the problem with creating a rule, we think the rule is pretty easy. If a court orders a sovereign to take any action which is otherwise unnecessary to a determination of its own jurisdiction, then the court has assumed jurisdiction over the sovereign. You can't order somebody to do something unless you have some power to do that. And unless the court's order relates directly to its determination of the sovereign's immunity, that order violates the sovereign's immunity. That's an easy test. If it arises in certain contexts procedurally, it will arise where perhaps mandamus is the appropriate remedy, where there is no other way for the sovereign to effectively vindicate the right of claims to have been violated in the discovery context, in the Pat Pandreau case where ministers were being subpoenaed. But in a case where otherwise the jurisdiction of the district court or the proceedings are effectively halted and there has been this determination as in this case, then the collateral appeal doctrine is appropriate. But this case, I would submit, Your Honors, should not be decided on some technical issue of whether or not it is mandamus or should have been the collateral order doctrine, should have been an appeal or not an appeal. The issue is whether the district court ordering the sovereign to do something before it had determined whether it had the jurisdiction to make that order is a violation of sovereign immunity and thus appealable. Thank you, Your Honors. Thank you. Case is submitted.
judges: Pillard, Wilkins, Katsas